Next matter on calendar is United States of America v. Casey Mahoney, 25-1990. All right. We're ready. Good morning, Your Honors, and may it please the Court. Alyssa Your Honors, the government has chosen on appeal not to defend the foundational theory of its case. Instead, the government asked this court to affirm on a basis the new theory, one that was never presented at trial. And in doing so, asked the court to find facts that the government told the jury were irrelevant to conviction. This court should refuse. The government indicted Mahoney for paying remuneration that varied by the volume or value of patient referrals to marketers who recruited patients to attend his drug treatment facilities. The district court endorsed the government's theory of prosecution, and over Mahoney's objection, concluded that ECRA, the Eliminating Kickbacks in Recovery Act, categorically prohibited the payment of variable remuneration. Now, two months after this court denied Mahoney's bail motion, it decided Shena, and Shena reached the opposite conclusion, holding that a percentage-based compensation structure for marketing agents without more does not violate ECRA, and thus rendering the government's trial theory legally invalid. Now, in response, the government now pivots to a novel medical decision-maker theory. That theory was never presented at trial, and yet the government claims that theory now supports Mahoney's convictions. So, I don't – I guess I agree that Shena didn't decide this issue, but I didn't really see it as entitles you to reversal. Decide what issue precisely, Your Honor? Shena doesn't entitle you to reversal. I don't think it decided this issue, did it? Decided what issue, Your Honor? Well, here we've got the term referral. We've got – you know, we've got – the facts of your case are a lot different. So, I'm just not – Shena's the only case on ECRA. I would give you that, but I guess I'm not viewing it as saying you're entitled to reversal on this. Let me explain that, Your Honor. So, Shena paid marketers to lie about the covered medical services. And the first question presented in Shena is whether payments to marketers as opposed to payments to doctors can violate the statute at all. And the court found the answer to that question was yes. Payments to marketers can violate ECRA provided that the marketers unduly influence referrals. The court reached that conclusion by defining the statutory term induced. And your people here are – we're dealing with marketers here. Marketers, correct. So, the government was required to plead and prove that Mahoney paid remuneration to induce referrals as the law defines it. Inducement, per the Supreme Court, is akin to criminal solicitation or facilitation, and it requires wrongfulness, wrongful inducement. The payment of variable remuneration, marketing, paid per head commissions cannot qualify as – Well, the facts in this case, as I saw them, two of the marketers testified against your client, right? Correct. And basically said when ECRA came out, they decided they were out of business. And then your client said, well, no, no, no, no, I got a way around. And so then he created these contracts that tried to make it look like it was something different. But in reality, these marketers still got money, and I believe that the clients still got money, right, depending on how long they stayed. Okay, so yes and no, Your Honor. So, in the first instance, yes, before ECRA was passed, the marketers testified that they received percentage-based remuneration commissions, precisely the kind of remuneration that Shen have found is not a violation of the law. The government alleged that after ECRA passed, Mahoney essentially carried on business as usual, that he did not in fact stop paying percentage-based remuneration, that he covered over those payments with flat-fee contracts. Now, that was the disputed issue at trial. Right, and they didn't decide it in your favor. The jury did not decide that issue in our favor. That's correct. But Shen have then hold that the percentage payment structure does not violate the law. Without more. Correct. Exactly, Your Honor. So the dividing line between guilt and innocence is no longer the payment of percentage or outcomes-based remuneration. That does not differentiate guilty from innocent. So how did we – oh, go ahead, Judge. Well, I'm just wondering why wouldn't the sham contracts, which we agree the jury found that it was a sham contract, why is that without the more? So the theory behind the, quote, sham contract is that it looks like a flat fee when in fact variable remuneration was still paid. Which sounds like concealing of something, which is criminal inducement. That is categorically different than Shen have. Well, it's true. But the point being is – Shen have just required more, and I'm just wondering why sham contracts isn't more. Well, so because induce has to be some kind of wrongful remuneration. So lies about covered medical services. Or we could look to the body of law in the Fifth Circuit. I mean the government's argument, I should say, is not that. The government is not claiming that the flat fee contract somehow would qualify as inducement because it's percentage-based remuneration, which is okay. Or percentage-based remuneration that may look like flat fee remuneration, which is also okay. So one – an attempt to cover up something that is not a violation of the law does not thereby violate the law. The government's argument is altogether different. Well, yeah. Go ahead. Okay. Just one line of question. Thank you. So I kind of agree with you that under one reading of Shen have that there's – it doesn't seem to fit the facts of the case. But then there's another sentence in Shen that says if a payment is made directly to a person who is making the referral, which seems to be the marketers in this case, the payment induces a referral by the very fact of the payment itself. What do we do with that? Right. That's where the government has now hung its hat. Yes. Right. So there are two answers to that. So one is that was not the trial theory. The government – that was not the trial theory. The government did not present a case to the jury that Mahoney was guilty because he paid marketers who interacted directly with patients. But that's what happened though, right? Yes. It was uncontested that the marketers interacted directly with patients. If ECRA reaches that far, that paying a marketer who interacts directly with a patient is per se a violation, then ECRA is void for vagueness. And that is because – well, for example, the evidence established in this case that peer-to-peer marketing is a commonplace payment arrangement. And Shen itself says we cannot construe this statute so broadly as to violate the First Amendment. A regular payment structure for marketing cannot violate ECRA because that would violate the First Amendment. And the same holds true here. It has to matter what the marketers say or do. If the marketers go to patients and, as here, say, I am a former addict. I understand. You should choose Mahoney's facility because they have great doctors and the best accreditations in the business and good food and soft beds. All of those were true statements, unlike the statements at issue in Shenna. That – it would violate the First Amendment to find that ECRA prohibits that content. But if you're getting paid for it, it's at least, at most, commercial speech, which has a lower level of protection than the First Amendment. A lower level of protection but hardly no protection at all. Are you making – I don't think you made a First Amendment argument. Yes, Your Honor. So in our opening brief, we do explain that if the – if ECRA is construed so broadly as to suggest that a payment to a marketer who interacts directly with a patient is per se illegal, that it would violate the First Amendment. Let me – I have a couple of questions. So if a patient broker can make referrals under ECRA, is there anything about Shenna that obviates the need then for the government to prove undue influence? No, Your Honor. That is precisely what the government does. Because the payments are made directly to the referral – the people who made the referrals? It's a factual question whether the marketer is the person making the referral. And let me explain why. So Shenna – I'm sorry. Okay, go ahead. I mean do you view these patient marketers in this case as simply – they're just kind of promoting the business? Yes, as marketers. As marketers rather than – But didn't the evidence show that they did a little bit more than just promote the business? The evidence was, again, probably contested as to whether – what Mahoney knew. What Mahoney knew and intended about what his marketers did. Ultimately, the government – Well, the patient brokers here approach patients who were apparently all seriously impaired by substance abuse disorders, and in many cases actively under the influence of controlled substances. Some of the people went more – like I think they said someone went eight times or something. I mean, you know, there's – I mean, we can – you can have what your side of the story is, but there was a whole other side of the story that was told at the jury trial, right? The government disclaimed reliance – expressly disclaimed reliance on evidence that Mahoney knew patients were being paid. The district court in sentencing says it as clearly as anyone could. The government said we don't have to prove that, and that's exactly what the government told the jury. The government told the jury there is no requirement for any charge that Mahoney know the patients are being paid. That is the only even theoretical form of undue influence at issue in this case. Can you explain to me why under Schena then the government still has to prove undue influence? Yes, exactly, Your Honor. All right. I have another question for you. Yes. How do we get to the idea of a decision maker? So Schena adopts the reasoning of a line of cases from the Fifth Circuit. And the Fifth Circuit initially draws a line in miles between the relevant decision maker and – not the relevant decision maker. The relevant decision maker being one who has the power to make a referral. And subsequently in Shoemaker clarifies that the relevant dividing line between guilt and innocence is not whether the payment is made directly to the relevant decision maker or not. Even a marketer can be guilty under the anti-capex statute if that marketer exerts undue influence, essentially steps into the shoes of the patient to usurp the patient's decision-making authority. Let's see. If I recall correctly, in Schena the marketing rep was literally a marketing rep talking to doctors, correct?  And the doctors were making the referrals to specific facilities I think it was. That's correct. Is that right? That is correct, yes. So here the patient marketers are directly – it's peer-to-peer as you said. They're meeting directly with the potential user or patient of another facility. Is that correct? That is. So what would the government have to prove? Well, let me start with a threshold clarification, which is that no referral is required to attend Mahoney's drug treatment facilities. There is no relevant decision maker in that sense. There is no human being who has the formal power to make a referral. So all that anyone could do is recommend the facility, and the question is how? Could the evidence show or ever show that the patient marketers were controlling the ones who needed the treatment? That was the fact pattern in Marchetti and in Poland. In Marchetti, the marketer paid his girlfriend to alter the doctor's prescription pads. So in that case, the court found that the marketer had usurped the physician's referral power. And in Poland, the defendant was the pacemaker sales representative. And following implanting a pacemaker, the doctor turned to him and said, where are we sending this person for monitoring? So he was the referrer. And the Fifth Circuit draws a line between that and undue influence. And marketing is not illegal. No matter how persuasive, no matter how persuasive in driving business, and even when remunerated per patient by volume or value, that is not a crime. So let me ask you this. The other broad question that I have is, what are you arguing, plain error? Or you said that this was not the government's theory at trial, and that's because Shenna came out. So is this legal error, lack of substantial evidence? I mean, what is the legal theory on which you seek reversal? So our first legal theory is sufficiency. And that is because the government was required to plead and prove undue influence and instead expressly disclaimed the jury's reliance upon the only evidence of undue influence in the case. So that would be reversal for a judgment of acquittal. Alternatively, Mahoney's convictions are predicated upon a legally invalid theory, just as in Yates, as in Simonelli, as in Millheiser. In that case, the remedy is reversal for a new trial where there is no legally invalid theory presented. I see. Okay. Can I ask one more?  Sorry. So I am somewhat confused by Shenna. How do you reconcile the two, undue influence and then the statement that payments directly to a person who is making a referral is essentially automatically illegal? The way I read it is that there's undue influence if it's to a marker or a third party. You need undue influence. But if it's a payment directly to the person making the referral, it carves that out, and you don't need undue influence. Is that how you read it? Yes, Your Honor. However, in Shenna, the question was, can payments to marketing intermediaries ever violate the statute? And the court was careful to explain that, yes, payments can violate the statute when the fact of the payment itself qualifies as inducement or when there is some additional element of undue influence over referrals. And here there was a decision tree. And the government has said, you know, we go one step above the decision tree. These are the referrers. So that was a theory never argued to the jury. It was a fact the jury was not instructed to find. And the only evidence that, in fact, these marketers took over the decision-making for the patients was the payments. And that's the fact that the government told the jury they did not have to find Mahoney new. So you're agreeing that under Shenna, then, the fact of paying the brokers would violate ECRA because you're saying the government didn't argue that theory to the jury, and so therefore it needs to go back? Not quite, Your Honor. So I think Shenna is drawing a distinction between doctors and medical professionals on the one hand and marketers on the other. That was the relevant distinction at issue in this case. I don't think Shenna – But in this case, Mahoney used – those would be doctors, right? The patient brokers were more like doctors rather than marketers. No, I believe that the evidence showed that the patient brokers were more like marketers rather than like doctors. Marketers don't have direct contact with patients generally. In this industry, they do. In fact, there was undisputed expert testimony that peer-to-peer marketing is – Well, then that doesn't make them more like – okay, go ahead. But if ultimately, Your Honor, decides, that's the decision point here. The dividing line between guilt and innocence is whether these marketers were more like doctors or more like marketers. That is a line the jury should be told exists, and the jury should find facts putting Mahoney on one side of that line or the other, and that did not happen in this case. Okay, so we've used up more than your time, so you have nothing left. But I'm going to give you two minutes for rebuttal. Much appreciated. Thank you. All right, we'll hear from the Governor. Good morning, Your Honors, and may it please the Court, Andrew Lang for the United States. Good morning. Mahoney was convicted of violating ECRA because he paid almost $3 million in remuneration to patient brokers for their referrals of patients to Get Real and Healing Path. Shanna confirms that that conduct is a crime under ECRA, and this Court should reject Mahoney's challenges to the sufficiency of the evidence and the jury instructions. I'm happy to start by talking briefly about Shanna itself. I think I agree with my – Why don't you go back for me? It would help. What was the theory of the case that you laid out to the jury? The theory of the case started – Just as it was then. Just lay it out. The theory of the case was Mahoney paid patient brokers. The patient brokers referred patients to Get Real and Healing Path, the clinics that Mahoney controlled. Those payments induced those referrals. That violated ECRA. That's the theory of the case that was presented – The payments to the – The brokers. Brokers. Yes, exactly. People like Dorian Ballou, people like Darius Moore, not the payments to the patients. Now, as I understand it from the evidence in the record, apparently those brokers also paid the recruits that they were after. Indeed, they did. And the record reflects that the market for patients was fiercely competitive. I believe Ballou characterized it as a numbers game. They would go to motels, find people in their networks, find people on Facebook, which they described as phishing, find people who needed to be given drugs in order to qualify. But the evidence at trial also was that Mahoney didn't know that they were doing some of those sort of questionable tactics. There was evidence that Mahoney was aware that they were getting paid, both in the form of Ballou's testimony and some documentary evidence that suggested that Mahoney was on emails accusing the clinics of getting payments to patients. Ballou also testified that when he needed money to buy drugs for the patients, he would sometimes get that money from Mahoney. But the payments to the patients, I think, while relevant to how the scheme operated, are not essential for this court to affirm. And that's because of Schena, as Your Honor pointed out earlier. Schena grappled with the meaning of ECRA in the distinct and, I think, more difficult circumstance where payments are being made to a marketing intermediary. So you have a person paying a marketer to go out and recommend services to a physician's practice, something like that. And courts, including this one now, have grappled with what that means. Is it criminal under the anti-kickback statute to bring a plate of cookies to office staff and suggest with pamphlets that they use a particular service? Well, no, because not all marketing is a crime. However, this court was very careful to distinguish that circumstance from the kind of case that we have here, where the payment isn't being made to an intermediary, who is in turn making a recommendation or a suggestion, exerting some indirect influence, and the case where payments are being made directly to the person who is making referrals. So I guess your interpretation of what Schena decided, what it didn't decide, and what it leaves here to decide would be helpful. Sure. So Schena decided a couple of important things about the scope of ECRA. It decided that ECRA does apply beyond the circumstance here, so it doesn't just have to be payments directly to the person making a referral. And in that circumstance, Schena determined that undue influence has to be shown as part of the government's proof, because when you have an indirect connection between the payer who's being prosecuted under ECRA and the ultimate decision maker, you need something more than just the payment to an intermediary. However, Schena was very clear in holding, in a case like this, the payment to the person making the referral is itself the inducement. So that's the case that we have here. The payment goes directly to the person making the referral. It sounds like you and your colleague on the other side agree on how to reach Schena, but she suggests that because it's questionable whether or not this involves marketers, or is more like with marketers or more like with doctors, that the jury should be presented that question and be able to decide that question. What's your response to that? So a couple of thoughts, Your Honor. So first of all, on an evidentiary front, the evidence was very clear that the people making the referrals in this case were the brokers. I think, in fact, Mahoney conceded as much in his Rule 29 motion, where he said all the government proved is that Mahoney was paying remuneration to people making referrals of patients. Indeed, the government did prove that, and that's enough to satisfy Schena. On the instructional side, I think we have a couple of problems. So the first problem with the argument about the inducement jury instruction is that that instruction wasn't requested, so we're here in the universe of plain error. It's not about the instruction and inducement. It's just the question of why shouldn't the jury have been presented the choice of saying that the brokers here were more like marketers or more like doctors. And that does seem like a factual question, unless you're saying it's a legal question, and then they decide based off of that question presented. I see what you're saying, Your Honor. I agree with you. I think it is a factual question, and I suppose I could imagine a world in which a district court gives a jury a little bit more guidance, and I think in a case where there's a more, shall we say, genuine dispute about the role of the referrers, for lack of a better word, perhaps such an instruction would be helpful. Of course, no such instruction was requested here, and I think it's fair to say, drawing from the Fifth Circuit's opinions in Marchetti and in Hall, that the instruction here was enough. The district court instructed the jury, you have to find that the payments induced the referrals, and in Hall and in Marchetti, the Fifth Circuit approved materially identical jury instructions. I disagree with Mahoney's characterization, respectfully, in the reply brief of those cases. If you go back and look at the instructions, that is what they say. You have to find that the payments induced the referrals. So for those reasons, I think the instruction here did enough, although again, I think in a closer case, perhaps some more guidance to the jury would be helpful. So ECRA doesn't define the term referral, right? Indeed. So who can make one? What in the government's opinion exactly is a referral under ECRA? So I agree with Your Honor. Regrettably, ECRA and also the anti-kickback statute use but don't define the word refer. I think under those circumstances, we can look to the common meaning of the term. So to send or direct someone for purposes of information or treatment. And that's exactly what happened here. And genuinely, I don't think that that was disputed at trial, whether the brokers were actually the ones making referrals. One of the first things that Mr. Ballou testified to when he took the stand was, I see my role as a patient broker is, quote, getting paid to send somebody to a rehab facility at page 645 of the record. Candidly, if that's not a referral, I'm not sure what is. I agree that the patient brokers didn't have some sort of technical or formal or medical power to bill for treatment or to send people for treatment in a sort of legalistic sense. But I don't understand that to be required. And indeed, in cases like Pollen, which this court approvingly cited in Shena, there the Seventh Circuit held that a marketer who was advertising cardiac monitoring services for a pacemaker company, that person had effectively taken over the referral decision. And the fact that that marketer couldn't personally authorize treatment as a physician or a biller for an insurance company was, in the Seventh Circuit's words, a mere formality. And so I think the common meaning of the word refer encompasses the kind of conduct that we have here, where the brokers are going out, finding patients, quote, unquote, fishing for patients and sending them to these rehab facilities. So if we adopt your proposed medical decision-maker standard, then why do you believe that the facts here show that the patient brokers exerted sufficient control over a patient's decisions to seek treatment at Mahoney's facilities to meet that standard? Sure. Well, first of all, I would perhaps tweak the premise of Your Honor's question by suggesting that Shena has resolved that question. When a person making referrals, even a marketing professional, who's taken over the position of making referrals, is the one getting paid, that's sufficient for equitable liability. That's the circumstance we have here. I would also suggest to Your Honor that there was ample evidence throughout the record that that is indeed the role that these patient brokers had taken on. They were finding patients. They were sending them. They were sometimes arranging for transportation, including by having patients flown in from out of state. There was documentary evidence that that was how others understood their role. So, for example, in one of the e-mails that we cite at page 43 of the excerpts of record, a staff member referred to Ballou as, quote, unquote, our referent. Could these patient brokers ever just be, you know, in the business of advertising? I can imagine a world in which that's possible. It certainly isn't the world that the record reflected existed here. So I think in a different case, you could imagine a patient broker who was making suggestions to a third party. So where would a patient broker in that kind of situation go too far? So this is perhaps the paradigmatic example of a case in which a patient broker has gone too far. Make it unlawful. Yeah, exactly. So the patient brokers go out and find patients and direct them to the rehab facilities. So what is the evidence in the record here on this point, and what is the relevance of the sham contractors and the testimony, I think, of one of the brokers that said, hey, I figured my career was over when ECRA got passed, and then Mahoney said, well, not so fast. I've figured out a way around this. Tell me exactly how that fits in here. Sure. So I think that's a fair characterization of the record. I believe that was Mr. Ballou's testimony that he thought, well, we might as well pack it up and go home. Mahoney assured him we can paper over the payment structure with these contracts. I think the sham contracts are relevant in a few different ways. So first of all, I think they very much help to establish Mahoney's willfulness. Obviously, ECRA, like the anti-kickback statute, has a willfulness requirement. The contracts here and the circumstances under which they were ginned up help show that Mahoney was aware of ECRA. He was aware of the need to at least appear compliant with a safe harbor, and he created a sort of fraudulent or false way of circumventing ECRA's prohibition. They were also relevant in terms of showing how the scheme worked, how the brokers got paid, how those payments were disguised. I think the concealment of those payments is further evidence of guilt, including the payments at one point that went to Mr. Ballou's mother, payments that went to various people's LLCs. So the short answer, Your Honor, is that they're relevant in a few different ways. I think probably they're most important to willfulness. Of course, as my friend on the other side mentioned, the contracts were also hotly debated in the context of the safe harbor affirmative defense, which I'm happy to talk about, but the jury rightly rejected that defense. Before you get there, what's your response to the First Amendment argument that if any payment to a decision maker is now illegal, that that violates the First Amendment? Well, a couple of thoughts on that, Your Honor. First of all, with respect, I don't understand my friend on the other side who have made a First Amendment argument. I think that's too little too late. I think that's waiver of the argument. That having been said, I don't think there's any big – It was a response to the government's open – I mean answering theory. It was the first opportunity to present it, I would suggest. But anyway, go ahead. Respectfully, I might disagree with that. But in any event, I don't think that there's any basis for a finding that the prohibitions in ECRA violate the First Amendment, where the basis is financial inducement to influence a health care decision. So in a case like this, it's paying for behavior. I don't think the First Amendment really would come into play at all. And even if it did, I think this is consistent with the general principle that fraud and inducement, solicitation, that kind of thing, when it's in connection with this sort of corruption offense, I think that's consistent with the First Amendment. Well, I don't really have any doubt that if this factual predicate had been discussed to Congress or whatever before ECRA was passed, that they would say, no, we do not want that going on. But the question is, are we trying to shoehorn this in to something that didn't anticipate everything that could happen here? So in terms of the trial, do you think that there was any error? Did you concede any area of error here? No, we did not, Your Honor, except with respect to the safe harbor instruction, which I'm happy to talk about, but not with respect to the sufficiency of the evidence or the general correctness of the government's legal theory. I would also make the observation. So on the sufficiency of the evidence, if we agreed with that, then that's just that's the end of the game, right? Anytime if we say there wasn't sufficient evidence, then you don't get to retry. That's correct, Your Honor. Obviously, we urge the court not to do that. But, yes, I agree. But Ms. Bell had a different, an alternative approach. In what respect, Your Honor? To say he didn't get a fair trial, to reverse it and send it back for another trial. Yes, if there were instructional error. If this court held that the evidence were insufficient to show ECRA liability, then, yes, I agree that that would be game over, so to speak. But, yes, on the instructional front, then a new trial would be called for. I've got one more. Go ahead. So, you know, Shen has just said, you know, without more, the percentage-based payment is not enough. But what about the idea of the sham contracts, that that is the something more that satisfies what Shen is talking about? So if undue influence is required on these facts, which we very much don't think it is, then we would urge this court to hold that the evidence supplied undue influence over the patients. I'm not sure that undue influence even really makes sense on these facts, because there isn't an additional decision-maker downstream from the patient brokers, which I think illustrates that we're in that sort of first Shenna category. But that having been said, again, if undue influence were required, our position is that the evidence demonstrated it. Most clearly through the fact that the patients were getting paid. Courts in other contexts have held- I thought you disclaimed that as your theory, though, at trial. So the patients getting paid was not the basis for the ECRA violations. The ECRA violations require a payment to induce a referral. Those payments at issue were the payments to the brokers. So, for example, when Mahoney proposed a jury instruction saying you have to find the patients were paid, we opposed that instruction, and the district court correctly agreed with us, because that wasn't the basis for ECRA viability. But we could still use that for sufficiency of evidence, the fact that patients were paid. Precisely, yes. And I think that goes to undue influence, if this court were to hold that undue influence is required, which, again, we don't think it is under a plain reading of Shenna. I see that I'm out of time, unless the court has additional questions. Let me find out. We don't appear to have any additional- Just to have one very minor question. To get into these treatment facilities, I gather, didn't require a doctor's sign-off? That's my understanding. There wasn't- Is there evidence in the trial? So, one of the intake specialists at, I believe, Healing Path testified, and his understanding was basically we got patients in part from the patient brokers, but there wasn't a lot of detail about the paperwork or other boxes that had to be checked. That they needed a doctor to sign off? I don't believe they did, but, again, the record wasn't really developed on that front. Okay. Thank you. Thank you. Thank you, Your Honors. Your Honors, I'd like to pick up on the notion of shoehorning, because that is exactly what is happening here. Well, I knew that's what you were saying, so I don't know whether I'm still struggling with all of this, but go ahead. But it is exactly right, Your Honor. Mahoney was indicted for paying variable remuneration, payments that varied by the volume or value of patient referrals. That is the theory set forth in the indictment. In opening statements, the government told the jury that he cannot pay per head. He engaged in prohibited per head marketing. In closing argument, the government said there's no requirement that he knew the marketers were paying the patients for any of these charges. He is guilty when he pays variable remuneration. In ruling on the Rule 29 motion, the district court found that the government had to do sufficient proof that Mahoney paid variable remuneration. That is the theory of conviction, and that is the theory that Schena found is no longer viable. Under those circumstances, there is a litany of case law that would require this court to reverse for a new trial. That's Simonelli. That's Solakian. In all of those cases, there was the possibility of finding additional facts and applying them to a new theory presented on appeal in the first instance. What if we read Schena to say that just a payment of money to the marketers is sufficient to establish undue influence? What happens to your case then? The payment of money to marketers per se is undue influence. If the payment of money to marketers is per se undue influence, a new trial is still required. Why? That is because that is not the theory that was presented to the jury. Mahoney's convictions are not predicated upon that theory. It's not a fact that the jury was required to find. It's a dividing line between guilt and innocence that was irrelevant at trial. Therefore, for this court to affirm on that basis would effectively put this court in the shoes of the jury. Wouldn't they have to have found that he paid the marketers based off of the government's theory, the remuneration theory? It necessarily includes payment to marketers. If anything, Your Honor, the fact that no one disputed at trial that Mahoney paid remuneration to marketers to market his facilities, which is permitted under Schena and under ECRA, the fact that no one disputed that demonstrates that the government's trial theory was not that. No credible defense attorney would concede guilt in their Rule 29 motion, let alone an opening argument. That is evidence that the government is fundamentally shifting its theory on appeal and asking this court to affirm on a basis never presented. And the Supreme Court says this court cannot do that. All right. Thank you for your argument. This matter will stand submitted.
judges: PAEZ, CALLAHAN, BUMATAY